At Chambers.    Before *Harris,* Justice, May 21, 1849.

### De Barante *vs.* Gott and others.

Marriage is a sufficient consideration to sustain a contract made in contemplation thereof; and such a contract will be enforced in a court of equity, upon the application of any person within the scope of the consideration.

The mutual stipulations and grants of the parties to an ante-nuptial contract, in favor of each other, are alone sufficient to give validity to the provisions of the instrument.

Where it was stipulated, in an ante-nuptial contract executed in France, that in case of the death of the wife without leaving children, her husband surviving, the real estate of which she should die possessed in the United States, should be immediately sold and the proceeds remitted to her husband; *Held* that this provision operated as a *grant* to the husband, contingent upon the death of the wife, to which effect was to be given upon the principle of equitable conversion.

*Held also,* that upon the death of the wife without leaving children, the husband became entitled to have her real estate in the state of New-York sold, and the proceeds remitted to him. And the ante-nuptial agreement not having appoint-

De Barante *v.* Gott.

ed a trustee to carry that object into effect, and the heirs at law of the wife being infants, *held further*, that a court of equity had power to appoint a trustee to sell such real estate and remit the proceeds to the husband.

Wherever a trust exists, either by the declaration of the party, or by intendment or implication of law, and the party creating the trust has not appointed any trustee to execute it, equity will follow the legal estate, and decree the person in whom it is vested to execute the trust.

If the persons in whom the legal estate is vested are infants, the court will appoint some proper person to execute a conveyance.

A testator devised to his executors all his estate, real and personal, in trust to sell the real estate, except a house and lot in Pearl-street, and a farm. He then gave to his sister-in-law J. C., the mother of his two nieces, during her widowhood, the use of the house and lot in Pearl-street. By the 7th clause of the will it was provided that in case of the death or marriage of J. C. before the nieces should both be married or attain the age of twenty years, they, or in case of the death of either, the survivor, should have the use and occupation of the house and lot in Pearl-street. The 11th clause of the will was as follows: "In case of the death of both of my said nieces, and only one of them shall have lawful issue, I then give, devise and bequeath unto such child or children the whole of my estate, both real and personal; and I hereby require and direct my said executors, if such child or children shall be under the age or ages above mentioned, to apply so much of my estate as may be necessary for their support, maintenance and education; and until the youngest of such children shall become of age, to pay to such as shall have become of age an equal share of the income of my estate, and then to assign and transfer unto such child or children all the money then on hand, and also all the stocks and securities in which any part of my estate may then be invested; and also to release unto such child or children my real estate to which my said executors may have acquired title in the management of my estate or otherwise, in trust for the devisees in this my last will and testament, whether named or not."

*Held* that J. C. took a life estate in the house and lot in Pearl-street, with a contingent remainder for life, in one half, to each of her daughters. That the contingency having happened, viz. the death of J. C. before the nieces were both married or had attained the age of twenty years, their respective life estates vested.

*Held also*, that the disposition which the will made of the remainder, after the death of the two nieces, was in contravention of the statute against perpetuities, and was therefore void. And that such remainder, not having been effectually disposed of by the will, vested in the heirs at law of the testator, upon the death of J. C.

In EQUITY. William Cook died on the 4th of July, 1834, leaving his mother, Candace Cook, and his two nieces, Sara Cook and Jeannette M. Cook, his only heirs at law and next of kin surviving him. By his will, he appointed John Gott, Richard Marvin and John L. Schoolcraft his executors, and de-

vised to them all his estate, both real and personal; to have and to hold the same in trust, nevertheless, to sell all the real estate, except the house and lot in Pearl-street in the city of Albany, occupied by the testator, and a farm in the county of Otsego ; and to invest the proceeds for certain purposes specified in the will.   By the *fourth clause* of the will he gave to his sister-in-law, Jennet Cook, the mother of his two nieces, during her widowhood, the use of the house and lot in Pearl-street.  By the *seventh clause* of the will it was provided, that in case of the death or marriage of Jennet Cook before the nieces should both be married or attain the age of twenty years, they, or in case of the death of either of them, the survivor, should have the use and occupation of the house and lot in Pearl-street.   The *eleventh* clause of the will was as follows :  " In case of the death of both of my said nieces, and only one of them shall have lawful issue, I then give, devise and bequeath unto such child or children the whole of my estate, both real and personal; and I hereby require and direct my said executors, if such child or children shall be under the age or ages above mentioned, to apply so much of my estate as may be necessary for their support, maintenance and education ; and until the youngest of such children shall become of age, to pay to such as shall have become of age an equal share of the income of my estate, and then to assign and transfer unto such child or children all the money then on hand, and also all the stocks and securities in which any part of my estate may then be invested ; and also to release unto such child or children my real estate to which my said executors may have acquired title in the management of my estate or otherwise, in trust for the devisees in this my last will and testament, whether named or not."   On the 22d of October, 1834, Sara Cook intermarried with the defendant, John Innes Kane, and on the 28th of September, 1842, she died, leaving two children, William Henry Kane and De Lancey Kane her surviving ; Jennet Cook, her mother, died on the 30th of Sept. 1839 ; Jeannette M. Cook, the other niece, attained the age of twenty-one years on the 8th of January, 1845, and on the 27th of June, 1846, she intermarried with the plaintiff in France.

De Barante *v.* Gott.

Previous to the marriage, an ante-nuptial contract was executed between the parties, in conformity with the laws of France. By this contract it was provided that in case of the death of the wife without leaving children, all her personal estate should become vested in the plaintiff, and the real estate of which she should die seised within the United States should be immediately sold and the price thereof remitted to the plaintiff. She died on the 26th of April, 1847, without having had any child.

The plaintiff filed his bill on the 18th of April, 1848, against John Gott and John L. Schoolcraft, as the surviving executors and trustees under the will of William Cook, deceased; and against John Gott, also, as the general guardian of Jeannette M. Cook, and against William Henry Kane and De Lancey Kane, the children of her deceased sister, and against John Innes Kane, as their guardian. The bill alledged that the plaintiff's wife, at the time of her death, was seised in fee simple in her own right, as a devisee and heir at law of William Cook deceased, of an equal undivided half part of the house and lot in Pearl-street; that she was also seised in fee simple, in her own right, as an heir at law of her father, of an undivided fourth part of a store in Hudson-street, in the city of Albany, and of the undivided half part of 250 acres of land in the county of Herkimer : that Gott and Schoolcraft had in their hands, as trustees under the will, securities amounting to upwards of $20,000, which belonged to his wife at the time of her death; that Gott, as her guardian, also had in his hands securities amounting to $6317. The plaintiff claimed and insisted that, under and by virtue of the provisions of the ante-nuptial contract, he was entitled to the whole of the fund in the hands of the trustees, and held by them for his wife at the time of her death, with all the interest and accumulations thereon since her death ; also to the moneys and securities in the hands of John Gott, as her guardian, with the interest and accumulations thereon; also that he was entitled to have the real estate, of which she died seised, sold and conveyed by some suitable person to be designated by this court in pursuance of the power, declaration and directions contained in the ante-nuptial contract,

and to have the proceeds remitted and paid over to him, and prayed for a decree to that effect; and also that the infant children of Sara C. Kane, by their guardian or otherwise, might be required, if necessary, to join in the conveyance.

The defendants Gott and Schoolcraft put in an answer, in which they admitted the facts as stated in the bill, and submitted themselves to the direction of the court in the premises. The defendant John Innes Kane put in a similar answer. The defendants William Henry Kane and De Lancey Kane, by Charles B. Lansing, Esq. their guardiam ad litem, put in a general answer. Replications having been filed to the several answers, proofs were taken, and the cause was brought to a hearing upon pleadings and proofs.

*J. Rhoades & J. C. Spencer*, for the plaintiffs.

*W. W. Frothingham & M. T. Reynolds*, for guardian of infants Kane, and for John Innes Kane.

*J. V. L. Pruyn*, for Gott and Schoolcraft.

*By the Court*, HARRIS, J. It is not denied that Madame de Barante, at the time of her death, was seised in her own right, as an heir at law of her father, of the undivided fourth part of the store in Hudson-street, and the undivided half of the land in Herkimer county; nor is it denied that she was entitled to the funds in the hands of the trustees, under the will, arising from the interest and income of her share of the estate, or to the amount in the hands of her guardian; nor did I understand it to be denied upon the argument that the plaintiff, by virtue of the marriage contract, became entitled to all the personal estate, and the proceeds of the real estate of which his wife, at the time of her death, was the owner. I can see no ground upon which the validity of that contract can be questioned. It seems to have been executed with the solemnities required by the laws of France; it was executed in reference to the marriage of the parties, which took place two days thereafter. This alone would constitute a sufficient consideration to sustain the con-

tract. "Marriage," says Chancellor Kent, in *Sterry* v. *Arden,* (1 *John. Ch.* 271,) "has always been held to be the highest consideration in law." Such a contract will be enforced in a court of equity upon the application of any person within the scope of the consideration of the marriage; (2 *Story's Eq.* § 986 ;) and besides, as was well said by the plaintiff's counsel upon the argument, the mutual stipulations and grants of the parties in favor of each other, are alone sufficient to give validity to the provisions of the instrument.

I also agree with the plaintiff's counsel in the effect to be given to the tenth clause of the contract, whereby it is stipulated, that in case of the death of the wife without leaving children, her husband surviving, the real estate of which she should die possessed in the United States, should be immediately sold, and the proceeds remitted to her husband. This provision operated as a grant to the husband, contingent upon the event which has happened. The manner in which effect is to be given to the grant is defined ; the real estate is to be immediately sold, and the proceeds remitted to the husband. It is a maxim in equity, acting upon the principle of equitable conversion, that whatever is agreed to be done, if the execution of the agreement would be lawful and just, shall be considered as done. See 2 *Kent's Com. 5th ed,* 230, *note a,* where numerous authorities sustaining and illustrating this principle are collected. It is upon this principle that where land is contracted to be sold, in the lifetime of the owner, it will, after his death, though not conveyed, be regarded as personal estate. Indeed, there is no principle of equity, which has a more extensive or varied application. The disposition of a portion of the very estate to which this suit relates, has been controlled by the application of this principle. (*Gott* v. *Cook,* 7 *Paige,* 534.)

The case of *Craig* v. *Leslie,* (3 *Wheaton,* 563,) cited by the plaintiff's counsel, is very much in point upon this branch of the case. Robert Craig, a citizen of Virginia, had made a will, devising to Leslie and four others all his estate, real and personal, in special trust to sell the same, and then bequeathed to his brother, Thomas Craig of Ayrshire, Scotland, the proceeds of

his estate, real and personal, so directed to be sold, to be remitted to him as payments were made. The question certified from the circuit court was, whether the legacy given to Thomas Craig, an alien, was to be considered as a devise, which he could take only for the benefit of the commonwealth, and could not hold; or a bequest of a personal chattel, which he could take for his own benefit. An admirable opinion was delivered by Mr. Justice Washington, in which the whole court concurred, wherein he comes to the conclusion that the legacy to Thomas Craig was to be considered as a bequest of personal estate, which he was capable of holding for his own benefit. ' The principle upon which the whole of this doctrine of equitable conversion is founded," he says, " is that a court of equity, regarding the substance and not the mere forms and circumstances of agreements, and other instruments, considers things directed or agreed to be done, as having been actually performed, where nothing has intervened which ought to prevent a performance." I can not doubt that the principle, thus clearly stated, embraces the case under consideration.

Assuming, then, that upon the death of Madame de Barante, her husband became entitled to have her real estate sold, and the proceeds remitted to him, the next question presented by the case is, whether this right can be enforced, and if it can, by what means. If the instrument which created this right in the plaintiff had also appointed a trustee to carry into effect the object, as in the case of *Craig* v. *Leslie*, no one, I apprehend, would have doubted the authority or the duty of such trustee to sell the real estate and remit the proceeds; but, it is a rule of equity, which is said to admit of no exception, *that it never wants a trustee.* It is the settled doctrine in equity that no trust shall be permitted to fail for the want of a trustee to execute it. Land to which a trust is attached remains chargeable with such trust in the hands of the heir or devisee. A court of equity will always establish and enforce a trust whenever a competent party applies for its aid, and presents a case entitling him to relief. " This principle," said Chancellor Jones, in *Mc-Cartee* v. *Orphan Asylum Society*, (9 *Cowen*, 437,) "partakes

largely of the true spirit of equity, and may justly be said to rank with the fairest features of the system." The general rule as stated by *Story*, (2 *Eq. Jur.* § 976,) is that wherever a trust exists, either by the declaration of the party, or by intendment or implication of law, and the party creating the trust has not appointed any trustee to execute it, equity will follow the legal estate, and decree the person in whom it is vested to execute the trust. Upon this principle it was held, in *Benthorn* v. *Wittshire*, (4 *Madd.* 44,) where estates had been directed to be sold and the proceeds divided among children, without appointing any person to make the sale, that the heir should execute the conveyance. In a similar case, *Patton* v. *Randall*, (1 *Jac. & Walker*, 194,) the devisees were directed to make the sale. But as in this case the heirs at law are infants, some person should be appointed by the court to execute a conveyance. It is within the provisions of the statute, in relation to the conveyance of lands by infants. (2 *R. S.* 194, § 167.)

The only question that remains relates to the house and lot in Pearl-street. On behalf of the children of Mr. Kane, it is insisted that, by the *eleventh clause* of the will, this house and lot, upon the death of Madame de Barante, leaving no lawful issue, became vested in them. On the other hand, the counsel for the plaintiff insists that, under the *seventh clause* of the will, upon the death of Mrs. Cook, before both her daughters had married or attained the age of twenty years, the absolute ownership of the house and lot vested in them as tenants in common ; and secondly, if, under the operation of the seventh clause of the will, Madame de Barante did not acquire title to the undivided half of the house and lot in question in fee simple, and though it may have been intended that the *eleventh clause* of the will should apply to the house and lot in Pearl-street, yet that clause cannot have the effect to vest any title in the children of Mrs. Kane by reason of the illegal limitation upon the power of alienation contained in that clause. These questions I proceed to consider.

The leading object of the testator obviously was, to keep the principal of his estate together until the death of both his nieces,

and then to distribute it among their descendants. To effect this, his design was to vest the title to the whole in his executors and trustees : accordingly, he commences by giving, devising and bequeathing to them, all his estate, real and personal, of what nature soever, or wheresoever situate. But the chief objects of his munificence were infants, and while he would preserve his estate unbroken, he was also desirous of making suitable provisions for them during their minority. To this end he gave to their mother the use of his dwelling house during her widowhood, and an annuity of $2000, for the support of herself and her family ; contemplating also, the event of her death, while her daughters were yet too young to provide for themselves, he directed that in that event, they or the survivor of them, in case of the death of either, should have the use and occupation of his dwelling house ; in that event, too, his mother, if living, was to reside with them in his dwelling house. If his mother should not be living, other provision was made for the care and education of the nieces until one of them should be married, or both should attain the age of twenty years. . The intention of the testator undoubtedly was to vest the title to his dwelling house in his executors, and to secure to his nieces a home there, until they should become entitled to the income of his estate. If their mother should live, unmarried, until that time, the dwelling house, upon her death would revert to the executors, to be disposed of by them, like the other property of the estate, for the general purposes of the will ; but in case the mother should die or re-marry before the daughters should both come into possession of the income of the estate, then they were to have the use and occupation of the dwelling house instead of their mother. How long they were to enjoy it does not appear from the will. There is some reason to believe that the testator only intended that this arrangement should continue until his nieces should be entitled to the income of his estate. Then they would possess ample ability to make such arrangements for themselves as might suit their own taste and inclination. But perhaps the fair construction of the provision is, that having once become entitled to the use of the dwelling house, they

should not be disturbed in that use during their lives. It was further provided, that in case of the death of either, the survivor should enjoy the use of the dwelling house to the same extent as both, while living, were entitled to enjoy it. As the nieces should respectively marry, or attain the age of twenty, they were to come into the full enjoyment of the entire income of the estate. These are the general purposes of the testator manifest upon the face of the will, in respect to his nieces, while living.

The legal effect of these provisions, so far as they relate to the house and lot in Pearl-street, is next to be considered. It has already been adjudged that " *the executors, as trustees, took no estate or interest whatever in the house and lot in Pearl-street, but that the whole beneficial interests devised, so far as the devise of an estate or interest in the house and lot was legal, passed directly to the persons for whose benefit the same were intended as legal estates.*" This was undoubtedly the effect of the 47th section of the article of the revised statutes relative to uses and trusts, upon this part of the will. Mrs. Cook, the sister-in-law of the testator, then, took a life estate in the house and lot, subject to a contingency which did not happen. She having died before her daughters were both married or had both attained the age of twenty, they became, under the seventh clause of the will, as controlled by the statute referred to, entitled to a legal estate of the same extent and duration as the beneficial use which it was the intention of the testator to secure to them. Upon the argument of the cause, when this will was brought before the court, for the purpose of settling the construction to be given to its various provisions, it was assumed by all the counsel, that the nieces, upon the death of their mother, took, each of them, a life estate in one half of the house and lot. I think this is the true construction of the provision of the will in this respect; and if it be so, it follows that, upon the death of Mrs. Kane, the period for which the power of alienation in respect to her half of the house and lot could be suspended, expired. An absolute ownership must have vested somewhere, immediately, so that an absolute estate in fee in possession could at once be conveyed; and so, also, in respect to the other half,

upon the death of Madame de Barante. But by the terms of the *tenth* and *eleventh* clauses of the will, such an absolute ownership could only vest upon the death of both nieces. It could not be determined who would be entitled to such ownership, until that event happened. The property was devised to the children of the two nieces. Who the persons thus made devisees were to be, could only be known upon the death of the surviving niece. Until that time, if the devise was to take effect, a fee in Mrs. Kane's half of the house and lot could not be conveyed. But this is a violation of the statute against perpetuities. The remainder thus sought to be vested in the children of both nieces, under the provisions of the tenth clause of the will, or, of one of the nieces, under the eleventh clause of the will, being therefore void, the whole estate in Mrs. Kane's half of the house and lot, at her death, went to the heirs at law of the testator. Nor would the result be different if the seventh clause of the will should be construed as intended to vest in Madame de Barante, upon the death of her sister, an estate in remainder for life in her half of the dwelling house. Such an estate would be void, (1 *R. S.* 723, § 17,) but the ultimate remainder in fee could not take effect, for the contingency had not yet happened which was to determine in whom such remainder was to vest. My conclusion, therefore, is that, in respect to the half of the house and lot in Pearl-street, in which Mrs. Kane held a life estate, under the seventh clause of the will, her children and her sister, as the heirs at law of the testator, became vested with an absolute ownership, immediately upon her death.

But Madame de Barante *might* have died before Mrs. Kane. In that event, it is obvious that the vesting of the remainder in her half of the house and lot must have been suspended, by the terms of the devise, until the death of Mrs. Kane. There would then have been no ascertained person to take the remainder in her half any more than there was to take the remainder in Mrs. Kane's half when she died. The only difference between the two cases is, that what, at the time of making the devise, was a *possibility* in respect to each half, actually

De Barante *v.* Gott.

happened in respect to Mrs. Kane's half. The death of Mrs. Kane served to reveal the latent vice which equally infected both devises. The devises were either valid or void *in their creation.* And whether valid or void, depended upon the question whether a contingency might happen which would suspend the power of alienation beyond the period limited by statute. We have seen that such a contingency *did happen* in respect to Mrs. Kane's half, and that it *might have happened* in respect to the other half. It was held in the case of the James will, (16 *Wend.* 171,) that the suspense of alienation must be so limited in point of duration, that it *can not, in any event,* exceed two lives ; otherwise it is void *in its creation.* "The question is not," says Justice Bronson, "whether the trust *probably will,* but whether it *can,* transgress the statute rules."

This, then, is the result of my examination. Mrs. Jennet Cook took a life estate in the whole of the house and lot with a contingent remainder for life in one half to each of her daughters. The contingency happened, and their respective life estates vested. It was not intended to vest any legal estate in Mrs. Cook or the nieces, but such estates resulted from the operation of the statute upon the provisions of the will. It can not, therefore, be inferred that the testator intended to give his nieces any more than a life estate in the house and lot. The disposition which the will made of the remainder after the death of the two nieces, was in contravention of the statute against perpetuities, and was, therefore, void. Such remainder, not having been effectually disposed of by the will, vested in the heirs at law of the testator upon her death.

A decree must be entered declaring the rights of the parties upon the principles above stated. It may also be referred to some proper person, as referee, to sell and convey the real estate of which Madame de Barante died seised, with directions to pay the proceeds, after deducting proper charges, to the plaintiff or his attorney. The trustees under the will, and the guardian of Madame de Barante, should also be directed to pay over to the plaintiff or his attorney, the several amounts in their hands

respectively belonging to her estate. Suitable directions may · be inserted in the decree for carrying these provisions into effect.

The defendants Gott and Schoolcraft, and the infant defendants William Henry Kane and De Lancey Kane, are respectively entitled to their costs. As between the plaintiff and John Innes Kane, neither is to have costs against the other.

———◆———

TOMPKINS GENERAL TERM, July, 1849. *H. Gray, Mason, and Morehouse,* Justices.