## RICHARDS v. MERRIMACK AND CONNECTICUT RIVER RAILROAD.

The power of a railroad corporation to borrow money and mortgage their property is not limited by the usual clause in their charters, that shares shall not be assessed over $100, and if more money is necessary it shall be raised by creating new shares.

An act of the legislature authorizing the trustees under a railroad mortgage to sell the road, is a ratification of the mortgage, so far as the State and public is concerned.

A mortgage of a railroad to secure bonds to be issued to raise money to pay the debts of the corporation, is not invalid, as given to secure future advances.

A mortgage of the personal property of a railroad company is not invalid if sworn to by the agents who executed it, because they did not sign the oath in behalf of the corporation.

Where vacancies in the board of trustees under such a mortgage are to be filled from the bondholders, the election of persons who have procured bonds for the purpose of qualifying themselves, will not be held invalid, if no fraud is intended.

A trustee does not cease to be chargeable as such, because he has parted with the bonds required as a qualification.

No person can be charged as trustee of a debtor if he is chargeable in equity to a third person as *cestui que trust*, whether he holds the property by right or by wrong.

THE writ was served on the trustees, Onslow Stearns and others, in June, 1859, founded on a judgment against the defendants, upon a claim originally due from the N. H. Central Railroad, a corporation established June, 1848, and united, by virtue of an act passed

January, 1853, with the Concord and Claremont Railroad under the name of the defendants — the corporation thus constituted being made liable for the debts of both corporations.

The capital stock of the N. H. Central Railroad was fixed by charter at 20,000 shares of $100 each, of which less than 4,000 were actually subscribed for and paid in. By section 5, no assessment shall be laid on any share of a greater amount than $100 in the whole, and if a greater amount of money shall be necessary, it shall be raised by creating new shares.

To raise money to pay the debts of the company, contracted in the construction of their road, the directors, by authority of the corporation, on the 24th of January, 1851, executed a mortgage of the road and other property of the company, to D. Clark, M. Moulton, and F. G. Stark, as trustees; the condition was, "If the N. H. Central Railroad shall pay," &c., "the accruing interest on (certain bonds particularly described in the preceding parts of the mortgage), and the principal thereof, when the same falls due, then," &c. The mortgage was duly executed under the seal of the corporation, and in its name by all the directors, except one, and by the trustees, duly acknowledged and recorded. Following the acknowledgment was an oath as follows: " We severally swear that the foregoing mortgage is made for the purpose of securing the debt specified in the condition thereof, and for no other purpose whatever, and that said debt was not created for the purpose of enabling the mortgagor to execute the said mortgage, but said bonds are issued to pay just debts of said company, or to raise money for this purpose, and for no other purpose whatever." This oath was signed by the trustees, and by all the directors, except one; but the signatures of the directors did not purport to be on behalf of the corporation.

The trustees covenanted to execute the trust, each being responsible for his own acts alone, and not for the acts of the others.

It was provided in the mortgage that in case of any vacancy in the board of trustees the remaining trustees or trustee, should supply the vacancy, by appointment from the bondholders.

The amount of bonds to be issued was not to exceed $200,000, and they were disposed of from time to time after the execution of the mortgage, according to its terms to that amount.

July 9, 1855, D. Clark resigned, and Moulton and Stark appointed the defendant, G. W. Nesmith, to fill the vacancy. Then Moulton and Stark resigned, and said Nesmith appointed the defendants, O. Stearns and G. A. Kettell, to supply their places. Said Nesmith, Stearns and Kettell were then holders of bonds, having each purchased a bond of $200, for the purpose of qualifying themselves to accept said trust.

On the 20th of July, 1855, said N. H. Central Railroad being in default, by deed duly executed, surrendered to said Nesmith, Stearns and Kettell, as trustees, the road and property embraced in the mortgage; and they took possession of the road and property for condition broken, and operated it, receiving the income till June 10, 1859, amounting to $31,327.14; and the road was subsequently operated by the bondholders under arrangements with the trustees.

By an act of the legislature, approved June 26, 1858, the trustees for the bondholders under the mortgage from the N. H. Central Railroad, were authorized to sell the mortgaged property according to its terms, and on the 10th of June, 1859, they sold and conveyed the same to R. N. Corning, and applied the purchase money in payment of the bonds.

The bonds held by Nesmith, Stearns and Kettell were purchased by them of the Northern Railroad, and paid for by their several notes. They were re-sold to the Northern Railroad, and paid for by giving up the same notes prior to June 10, 1859.

*Morrison & Stanley*, for the plaintiff.

I. The bonds which the mortgage was given to secure were not a valid and binding debt of the N. H. Central Railroad. Corporations exist only by virtue of the laws which create them, and are confined to the exercise of the powers granted by them. Angell & Ames (on Corp. 85) lay it down as a settled rule, that a corporation has no other powers than such as are especially granted, or are necessary to carry into effect the powers expressly granted. Here by the charter the object to be accomplished by the corporation was pointed out, and the means to accomplish it. The legislature gave power to do a certain thing in a certain way, and the corporation was bound to accomplish it only in the way and by the means pointed out. We find in the charter no authority to borrow money to build the road, nor to issue bonds and mortgage the road, either expressly or by implication. That power is not necessary to carry into effect the powers expressly granted, and no act of the legislature has since authorized the issue of such bonds.

Redfield (on Railways 37 and 422) lays it down that the resort to loans and mortgages can be justified only by necessity, and by permission of the legislature.

If we consider the intention of the legislature, we can come to no other conclusion than that it did not intend to grant authority to raise money by loan and mortgage; otherwise why prescribe the way money should be raised to build the road.

It may be said, that though the corporation had no authority to issue their bonds and to execute this mortgage, yet they are estopped to say that they are void. If that were so as between the corporation and the bondholders, it is not so as between the corporation and this plaintiff. He stands in a position to take advantage of the illegal or unauthorized acts of the corporation. As to him these bonds are void. If the bonds were void, either as against the corporation, or as between the corporation and third parties, the mortgage is also void.

II. But if the bonds were valid, the mortgage is void, (1) because it was not sworn to by the mortgagor. Comp. Stat., ch. 138, sec. 5, 294. Upon this point the matter of personal mortgages is wholly a matter of statute regulation, and unless some person is named who shall make the affidavit for the corporation, no valid mortgage can be made by it. The corporation can not do it, and without this requisite the mortgage is void. The statute is peremptory, and this

provision can not be omitted. This mortgage purports to be the act of the corporation under its corporate seal. If the court should. hold that the directors, in the absence of any statute, may make the oath for and in behalf of the corporation, still this mortgage is void, because the directors, in signing the oath, do not pretend to act for the corporation, nor does the certificate of the magistrate state that they so acted. *Hill* v. *Gilman*, 39 N. H. 88, and cases. cited. (2) The mortgage is bad because given to secure future advances. The bonds were not issued when the mortgage was made, but were issued from time to time afterward. The corporation was not indebted on the bonds till they were disposed of. When the mortgage was made there was no liability on account of the bonds which the corporation could secure. The case comes within the principle in *Belknap* v. *Wendell*, 31 N. H. 92; see Comp. Stat. 294, sec. 7; *Page* v. *Ordway*, 4 N. H. 253. (3) The mortgage is bad because the oath does not correctly set out the liability intended to be secured. The statute requires that the nature of the liability shall be stated truly and specifically, in the condition of the mortgage, and the affidavit shall be so far varied as to verify the validity, truth and justice of such liability or agreement. Comp. Stat. 294, ch. 138, sec. 7. The oath in this case does not verify the validity, truth and justice of the liability set out in the condition. The condition sets out bonds and interest to be paid, and the oath does not allege that said bonds are due and owing from the corporation, but simply that they are issued to pay just debts, or to raise money for that purpose. The bonds were not due to the mortgagees; they were due to the holders, whoever they might be; and the oath should have been varied, so as to verify that fact; instead of that, the mortgagees are treated and mentioned as if the debt was due to them.

If, then, the mortgage was void, and the bonds were void, the trustees should be charged for the amounts received by them. If the mortgage was void, the whole action of Stearns and his co-trustees was void. They were wrongfully in possession, and the sale by them to Corning was void. *Leeds* v. *Sayward*, 6 N. H. 86; *Spinney* v. *Hosiery Co.*, 25 N. H. 9.

III. But if mortgage and bonds were valid as against the corporation at their inception, all the acts of Stearns, and his co-trustees, after October 29, 1858, were without right. The mortgage provides that in case the trustees named should resign, new ones may be appointed from the bondholders. The purpose was that those appointed should have an interest in the bonds, and a regard for the interests of the holders. These trustees were never bondholders in reality. They never paid a dollar for a bond, nor purchased any, except of the Northern Railroad, of which they were officers, to qualify themselves as trustees. If that were sufficient, they could not act after they ceased to hold them, October 29, 1858. They could not have been appointed after that; and if disqualified to be appointed, they were disqualified to hold the trust, or act as trustees.

*Minot & Mugridge*, for Stearns and others, Trustees.
Corporations of this character have a general power to contract

debts, borrow money, &c.   *Pierce* v. *Emery*, 32 N. H. 484, and authorities cited; Redf. R. W. 574, &c.   It is practically settled by universal usage, involving immense pecuniary interests.   The general power is not questioned, but it is said it is precluded by the particular provisions of the charter of this corporation.   Such is not their proper construction.   The limitation of assessment on each share is intended only to limit the subscribers' liability as such.   The authority to create new stock is only in aid of the corporation, to provide a course it may adopt, not must.   Those provisions do not preclude the general powers of such corporations.

The power to raise funds otherwise than by assessments, or the creation of new stock, is denied.   Upon the same reasoning the power to make contracts in building its road is denied, for that is only providing means to build it.   If the creation of such debts is not forbidden, it would be equally reasonable to hold that they are not forbidden to raise money on their notes, or credit, to pay those debts.

The statutes provide for the individual liability of stockholders, for debts of corporations.   If the corporation can not create any valid indebtedness against itself, it could not against its stockholders.   But this has never been urged.   *Chesley* v. *Pierce*, 32 N. H. 388; *Harvey* v. *Chase*, 38 N. H. 272.   See remarks of *Perley*, C. J., in *Emery* v. *Pierce*, before cited, and *Curtis*, J., in *Hall* v. *Sullivan Railroad*, Redf. R. W. 578, note; see *Union Bank* v. *Jacobs*, 6 Humph. 515; Redf. R. W. 574.

The bonds were made to pay debts of the corporation, and it is now estopped to deny their propriety or legality.   The plaintiff says, though the corporation may be estopped, he is not.   But the trustee process is an equitable proceeding, and the plaintiff stands in the place of the principal defendant, so far as equities are concerned.   *Pittsfield Bank* v. *Clough*, 43 N. H. 178.

2. As to the validity of the mortgage, the first and third objections apply to it only as a mortgage of personal property.   If defective as such in the respects suggested at first, the plaintiff can derive no benefit from that; (1) because in this action the plaintiff stands in the place of the corporation, and the mortgage was valid as to it, without any of the formalities referred to.   Rev. Stat., ch. 138, sec. 10.   (2) Because the mortgaged property, at the service of the process, had been delivered to the mortgagees, and was then in their possession.   Rev. Stat., ch. 138, sec. 10.   Beside, the trustees could hold the personal property as pawnees, by virtue of the original mortgage, and the deed of surrender to them.   *Rowley* v. *Rice*, 11 Met. 333; approved *Pierce* v. *Emery*, before cited.

The second objection, that the mortgage was given to secure future advances, avails nothing, for the personal property having been delivered to the trustees, and actually taken possession of by them, they can hold it as pawnees, if not as mortgagees.   A pawn can legally be made to secure future advances.   2 Kent Com. 584; Story Bail. 203, sec. 300.   At the surrender, bonds were outstanding to the full amount, and the trustees could hold the personal prop-

erty as a pledge, and if the objection is held good as to the mortgage of the real property at first, yet the deed of surrender operated as a confirmation of it, or to create a title, so as to be valid as to the bonds outstanding.

As to the general power of a corporation to mortgage its property, we refer to *Emery* v. *Pierce*, before cited, and Redf. R. W. 574, &c. Whatever questions arise as to such conveyances with reference to the State, they do not apply to the corporation itself. It can not avoid its own acts, and therefore the plaintiff can not in this case. Redf. R. W. 588, 589, note. In this case the bonds and mortgage have been virtually approved and ratified, so far as the State is concerned, by various acts of the legislature; Act of June 8, 1853, and Act of June 26, 1858. As to the effect of these acts, see *Curtis*, J., in *Hall* v. *Sullivan Railroad*, before cited, and *Shaw* v. *Norfolk County Railroad*, 5 Gray 179. In those cases the bonds were to secure future advances.

3. If the mortgage was invalid as to the real and personal property, yet the trustees, Stearns and others, would not be chargeable in the action. They can hold the personal as pawnees for the benefit of the bondholders, and they are never chargeable for real estate. If their title to the property sold was invalid, no title passed, and they are liable to refund the purchase money, and so are not chargeable for its proceeds, nor for the receipts of the road, while operated by them; for having taken possession and received the income, with the assent and agreement of the parties concerned, for the benefit of the bondholders, those receipts must be so applied, and can not be held by this process. *Lawrence* v. *Denny*, 25 N. H. 155; Story Bail. 203, sec. 300. The corporation could not claim the receipts as against the bondholders, and therefore the plaintiff can not in this action. *Getchell* v. *Chase*, 37 N. H. 106. The trustees were representatives and agents of the bondholders. Their receipts could be held to satisfy the claims of the bondholders, as if they were in the hands of the bondholders themselves, under the general right of set-off in trustee cases.

4. Stearns and others were duly appointed trustees, and accepted the trust. Except by a resignation they could not discharge themselves from their responsibility. No instrument, however formal, would have defeated the rights of the bondholders in the trust. What they could not do directly they could not do indirectly. If all the trustees had resigned, or died, the trust would have remained, and chancery would fill the vacancy by the appointment of new trustees. If the transfer of their bonds were held a virtual resignation of the trust, yet the trustees would be accountable to the trust, not to the corporation, for their subsequent receipts, and would not be chargeable in this action. Strangers to the trust, having notice of it, would be chargeable with the trust. 1 Story Eq. 384; 2 Story Eq. 503, 504; *Manning* v. *Gloucester*, 6 Pick. 6–18; *Safford* v. *Rantoul*, 12 Pick. 233, and cases cited. These plaintiffs could not stand in a better position in that respect.

The trustees could not be charged, if they were never trustees, or the mortgage was invalid. The property having been received

by them for a particular purpose, by consent of all concerned, on their engagement to hold and apply it accordingly, they would be bound as contracting parties, if not as official trustees, so to hold and apply it.   The bondholders could claim the benefit, and the plaintiffs could not hold them in this action.

We contend that they were duly appointed trustees, and duly continued and acted as such, notwithstanding the transfer of their bonds.

*Fowler & Chandler*, for Concord Railroad, Gilmore and Corning, Trustees.

1. The N. H. Central Railroad, as a corporation authorized to construct and operate a railroad, had power to contract debts in effecting those objects.   The rule is, that if the means employed are reasonably adapted to the ends for which the corporation is created, they come within its implied or incidental powers.   It was proper and necessary for this corporation to contract debts in effecting the purposes of its charter.   The incurring of debts by railroads was contemplated by the legislature, their stockholders being rendered individually liable for such debts.   Laws of 1848, ch. 662, secs. 1, 2; Ang. & Am. on Corp., ch. 8, sec. 12, 200, 201; *Broughton* v. *Waterworks*, 3 B. & Ald. 12; *Edie* v. *E. I. Co.*, 2 Burr. 1216; *Yarborough* v. *Bank of England*, 16 East 6; *Murray* v. *E. I. Co.*, 5 B. & Ald. 204; *People* v. *Utica Co.*, 15 Johns. 383; *Firemen's I. Co.* v. *Ely*, 2 Cow. 699; S. C., 5 Conn. 568; *Strauss* v. *Eagle I. Co.*, 5 Ohio, N. S., 59; *Madison Co.* v. *Watertown*, 5 Wis. 173; *Magee* v. *Mokolumny, &c.*, 5 Cal. 258; *Reynold* v. *Com'rs of Starks*, 5 Ham. 664; *Bank of Utica* v. *Smedes*, 2 Cow. 662; *N. Y. Ins. Co.* v. *Sturgis*, 2 Cow. 664; *Moss* v. *Oakley*, 2 Hill 265; S. P. 4 Hill 263; *Burr* v. *McDonald*, 3 Gratt. 215; *Union Bank* v. *Jacobs*, 6 Humph. 575; *Allen* v. *Montgomery Railroad*, 11 Ala. 437; *Furniss* v. *Gilchrist*, 1 Sandf. S. C. 53; *Russ* v. *Phenix, &c., Co.*, 14 Barb. 358; *Pierce* v. *Emery*, 32 N. H. 484; *Moses* v. *Boston & Maine Railroad*, 24 N. H. 82; *Smith* v. *Nashua & Lowell Railroad*, 27 N. H. 94.

2. Having properly incurred the debts for which, or to raise money to pay which, these bonds were issued, it was competent for the corporation to make and issue the bonds, as a substitute for the original debts.   *Philadelphia, &c., Co.* v. *Lewis*, 33 Penn. 33; *Whitewater, &c., Co.* v. *Vallette*, 21 How. 414; *Strauss* v. *Eagle, &c., Co.*, 5 Ohio N. S. 59; Pierce on Railroads 372, note, and authorities; *Union Bank* v. *Jacobs*, 6 Humph. 575; *Chesley* v. *Pierce*, 32 N. H. 388; *Harvey* v. *Chase*, 38 N. H. 272; *Came* v. *Brigham*, 39 Me. 35; *Clark* v. *School District*, 3 R. I. 199; Ang. & Am. on Corp., ch. 8, sec. 12, 200.

3. The corporation as such had full power at common law, without special consent of the legislature, to mortgage all its property and its franchise of managing and controlling its railroad, in trust, to secure the payment of its debts.   *DeRuyten* v. *St. Peter's Church*, 3 Comst. 238; *Haslem* v. *Bishop*, 3 Wend. 113; *Jackson* v. *Brown*, 5 Wend. 590; *Gordon* v. *Preston*, 1 Watts 385; *Dispatch Line* v. *Bellamy*, 12 N. H. 205; *Flint* v. *Clinton Co.*, 12 N. H. 430; *Pierce*

v. *Emery*, 32 N. H. 504; *State* v. *Mexican, &c.*, Rob. La. 513; *Bank of Middlebury* v. *Egerton*, 30 Vt. 182; *Treadwell* v. *Salisbury Manf. Co.*, 7 Gray 393; *Susquehanna, &c.*, v. *General I. Co.*, 3 Md. 305; *Allen* v. *Montgomery Railroad*, 11 Ala. 437; *Mobile, &c., Railroad* v. *Talman*, 15 Ala. 472; *Pollard* v. *Maddox*, 28 Ala. 321; Redf. R. W. 576, n. 14 to 21; *Peter* v. *Kendall*, 6 B. & C. 703; Com. Dig., Grant C.; Pierce on Railroads 511, note and authorities.

4. It is not material whether they had this authority or not. It is certain they had the right, with the authority of the legislature. The legislative sanction given to the mortgage after its execution is equivalent to a previous authority to execute it. These bonds and this mortgage were recognized by the act of January, 1853, and sanctioned by that of June, 1858, which authorized the trustees to sell and convey the road and franchises, under the mortgage, to pay the bonds. Redf. R. W. 575, 576, and authorities; *Hall* v. *Sullivan Railroad*, Redf. 578; *Shaw* v. *Railroad*, 5 Gray 162; Pierce on Railroads 511, note, and authorities.

5. The questions as to the validity of the mortgage, because the oath was not taken in the name of the mortgagor, and because it was given to secure bonds not issued, and because it did not correctly set forth the liability to be secured, are immaterial. They only apply to the mortgage as a conveyance of personal property; and if that property was not affixed by destination to the realty, so as to pass with the real estate, it had passed into the possession of the trustees long before the plaintiff had any rights in it, and it was then of no consequence whether the mortgage was executed according to the statute or not. The statute formalities are required only where possession is not taken by the mortgagee. The conveyance accompanied by possession, was at least a valid pledge. Beside, it was competent for the legislature to authorize the conveyance of the property of this corporation in a specified way, or to sanction the validity of its conveyance after one had been made, though not in conformity to the general laws of the State. This sanction has been granted, and being equivalent to a previous express authority, neither the plaintiff, nor any one else, can now object to the validity of a mortgage executed in accordance with the sovereign will. Comp. Laws 294, sec. 10; *State* v. *Commissioners of Mansfield*, 3 Zab. 510; Redf. R. W. 590, note 21, and authorities; *Hall* v. *Sullivan Railroad*, and *Shaw* v. *N. C. Railroad*, before cited; *Pierce* v. *Emery*, 32 N. H. 506; *Rowley* v *Pierce*, 11 Met. 333; 2 Kent Com. 584.

6. The provision that vacancies in the board of trustees should be filled by bondholders was simply directory. Beside, the acting trustees having been expressly authorized by the legislature to convey the mortgaged property, it was immaterial whether they were or had been bondholders. They were recognized in their official character, and empowered to sell. They sold under the authority of the legislature, and not by force of the mortgage. The legislature might have authorized any three indifferent persons to have made the sale, and it would have been valid. See authorities before cited.

7. In this action the plaintiff can claim only the rights and funds which the corporation could claim upon equitable principles. By their deed they are estopped to claim any thing out of the property mortgaged to secure the bonds, till they are paid. *Hale* v. *Union Co.*, 32 N. H. 295; *Lawrence* v. *Denny*, 25 N. H. 155; Story Bail., sec. 300; *Getchell* v. *Chase*, 37 N. H. 106; *Pittsfield Bank* v. *Clough*, 43 N. H. 178.

8. Neither Corning, nor the Concord Railroad, as his agent, can be held as trustees of the defendant, till the bonds are paid, without regard to the validity of the sale. Corning is *bonâ fide* owner of the bonds. He is in possession of the road under the assignment of the trustees, which is at least a pledge of the property and its income for the payment of the bonds. Neither the corporation, nor the plaintiff as its creditor, can recover any thing from him on account of the property, or its income, in opposition to the mortgage and deed of surrender, till payment in full of the bonds. Cush. Trus. Pro., ch. 4, sec. 2, and authorities; 1 Story Eq., sec. 533.

BELL, C. J.* Notes of a corporation, signed by its officers acting within the scope of their authority, are binding upon it, provided they are made or given for any of the legitimate purposes for which it was incorporated. Ang. & Am. on Corp. 234, 245; *Smith* v. *Nashua, &c.*, 27 N. H. 94; *Beers* v. *Phenix, &c.*, 14 Barb. 362; *Moss* v. *Oakley*, 2 Hill 263; *Kelly* v. *Mayor, &c.*, 4 Hill 265; *Attorney General* v. *Life, &c.*, 9 Paige 476; *Mott* v. *Hicks*, 1 Cow. 513; *McCullough* v. *Moss*, 5 Denio 577; *Came* v. *Brigham*, 39 Me. 39; *Bank, &c.*, v. *Patterson*, 7 Cran. 299; Pierce on Railroads 372.

A corporation, created to construct a railroad, has power to borrow money, as one of the implied means necessary and proper to carry into effect its specific powers; and to give its promissory notes for the repayment of it. *Union, &c.*, v. *Jacobs*, 6 Humph. 515; Ang. & Am. Corp. 234, note 3; *Harvey* v. *Chase*, 38 N. H. 278.

This power is not restricted by the provision of the charter, limiting the capital stock of the corporation to 20,000 shares; and prescribing that no assessment shall be laid on any share of a greater amount than $100 on each share; and that if a greater amount of money shall be necessary, it shall be raised by creating new shares. *Union, &c.*, v. *Jacobs*, 6 Humph. 515; see *Kelly* v. *Mayor, &c.*, 4 Hill 265.

Generally, corporations have the power at common law to sell and convey their property, as they think proper. Redf. R. W. 575; *Gordon* v. *Preston*, 1 Watts 385; *Treadwell* v. *Salisbury, &c.*, 7 Gray 404.

The power of a corporation to sell and convey its property, and to borrow money, and make contracts, implies the power to mortgage its property, real or personal, to secure the payment of its debts. Redf. R. W. 575; *Gordon* v. *Preston*, 1 Watts 385; *Haxton* v. *Bishop*, 3 Wend. 13; *DeRuyter* v. *St. Peter's, &c.*, 3 Barb. Ch. 124; S. C., 3 Comst. 242; *Dispatch, &c.*, v. *Bellamy, &c.*, 12 N. H. 205;

* Judges Bellows, Nesmith and Bartlett did not sit.

*Flint* v. *Clinton, &c.,* 12 N. H. 430; *Pierce* v. *Emery,* 32 N. H. 504; *Jackson* v. *Brown,* 5 Wend. 594.

These principles are regarded as so well settled by authority, and by the common sentiment of the community, as to require no discussion. Common errors, upon which great amounts of property have been invested, can not safely be corrected.

The general principle, that corporations may sell or mortgage their real or personal property at their pleasure, is subject to exceptions from the nature and purposes of some of them, and from the duties and liabilities imposed on them by their charters. Corporations for public objects, to which large powers are given to enable them to accommodate the public, and upon which public duties are imposed for the benefit of the community, are held in England and in this State to be disabled to do any act which would amount to a renunciation of their duty to the public, or which directly and necessarily disable them from performing it. They can not convey away their franchise and corporate rights, nor perhaps the track and right of way, which they take and hold for the necessary use of their road. *Treadwell* v. *Salisbury, &c.,* 7 Gray 204; *Pierce* v. *Emery,* 32 N. H. 484. It is in the power of the legislature, as the representative of the public rights and interests, to authorize the corporation to convey or mortgage their franchise and all the property of the corporation. In this case, at the time of the conveyance to the trustees, which is relied upon as part of the defense, the legislature had not given any assent or authority to execute such a mortgage; but it is contended that the mortgage is only voidable, and that it was capable of being ratified and affirmed by the legislature, and that it would thereby be rendered valid and effectual, and that such is the necessary effect of the statute of June 26, 1858, by which the holders of the mortgage were authorized to make sale of the mortgaged property. Though we can not assent to the broad terms in which it seems to be asserted, that the legislature may interfere with private rights, yet we entertain no doubts that the legislature may waive the public right to object to the acts of others, because they are opposed to the public interests, and where any act is invalid for want of legislative assent, may waive the objection, and ratify such act by a subsequent statute. *Pierce* v. *Emery,* 3 N. H. 504; *Hall* v. *Sullivan, &c.,* Redf. 578; *Shaw* v. *Norfolk, &c.,* 5 Gray 162; Pierce on Railroads 511. And we think the statute here relied upon must be held to have confirmed the mortgage to the trustees, so far as it was defective for want of authority from the legislature, and to be a waiver also of all objection which the State or the public could have to the election or qualification of the new trustees.

It was not in the power of the legislature, by subsequent acts, to change the rights of individuals in relation to particulars in which the State had no rights. These can not be affected by retrospective legislation. All such rights must be determined according to the laws in force when the rights of the parties interested respectively accrued, or became definitely fixed. *Rich* v. *Flanders,* 39 N. H. 304.

Except the objections before suggested, it is not contended that

the notes and mortgage here were not made for purposes within the legitimate objects of the corporation.

It is however said that the mortgage is invalid, because it was given to secure future advances. Our statute (Rev. Stat., ch. 13, sec. 3) provides, that no estate conveyed in mortgage shall be held by the mortgagee for the payment of any sum of money, or the performance of any other thing, the obligation or liability to the payment or performance of which, arises, is made, or contracted, after the execution and delivery of such mortgage. The notes or bonds here were not issued until after the mortgage was made, and the corporation was not indebted in any way on account of these bonds, till they were disposed of subsequent to the formal execution and record of the mortgage. But this seems to us a narrow construction of the statute. It has been long held that a mortgage is not discharged by the renewal of the note, though by the deduction of payments and the addition of interest, the amount and date may be changed, but will be held a valid security for the new note. The law thus distinguishes between the debt and the instrument made as its evidence and security, the debt continuing though the note is changed.

Now the case finds that the notes and mortgage were made to raise money to pay the debts of the company, contracted in building the road. It was not a new indebtedness to be afterward contracted, but the old debt, which was in the view of all the parties to the mortgage, and though the notes were to be of different dates and amounts, and perhaps to different persons, yet the court will look through the forms of the transaction, and if it is shown tht the mortgage is made to secure the payment of an existing indebtedness, it will be sustained.

A broader view would equally sustain this mortgage. It has been usual for cautious men to require that their mortgages should be put on record, and a certificate brought from the registry, that there is no previous incumbrance on the property, before advancing their money. It has never been doubted that such a mortgage was valid, though the note is made and the money advanced after the mortgage is made and recorded. The cases of *Ward* v. *Borden*, 30 N. H. 386; *Parker* v. *Dustin*, 22 N. H. 424; *Stephens* v. *Buffalo*, &c., 20 Barb. 332; *Sawyer* v. *Thornton*, 3 Met. 281; *Parker* v. *Parker*, 1 Gray 409, sustain the position that a mortgage does not take effect till the actual advance of the money, where the deed is first sent to the records to be recorded. And a delivery of a deed to the register for the use of the grantee, intending that it shall then take effect, with the assent of the grantee afterward, is sufficient; 2 Greenl. Cr., Tit. 32, ch. 2, sec. 64, and note; *Mayne* v. *Clark*, 6 Cush. 11; as between the parties, though not against an intervening attachment. *Ibid.*, and cases cited; *Harrison* v. *Phillips*, &c., 12 Mass. 461; *Jackson* v. *Rowland*, 6 Wend. 666; *Lamson* v. *Thursday*, 3 Met. 281. In these cases, until the money has been advanced or the assent of the absent grantee has been obtained, the transaction may be regarded as incomplete, and *in fieri*, and whether a day intervenes, or weeks, is unimportant. Upon the same view, the mortgage in this case may be regarded as incomplete, until the notes are

issued. Cases like this seem not to fall within the spirit of the statute provision, however much they may appear to do so in terms.

The answer of the counsel as to the prospective issue of the bonds, seems also quite satisfactory. At the time the trustees took possession of the railroad, the corporation surrendered it by a deed, which operates as a recognition and ratification of both the mortgage and notes, which had long before issued, from that time; and this was long before the present plaintiff commenced his suit. Beside, this objection applies only to the mortgage, as it relates to the real estate, as it is said, and a trustee is not chargeable in this process for any other than personal property.

It is insisted that this mortgage was not duly executed, as to the personal estate, because it was not sworn to by the mortgagor. It is throughout the deed of the corporation, executed by the directors in the corporate name; but the directors, in signing the oath, did not profess to act for the corporation, and the certificate of the magistrate does not show that they acted for the corporation. They appear as acting for themselves alone. This question appears to be settled by the decision of the court in *Flint* v. *Clinton, &c.*, 12 N. H. 430–436. There the company made an assignment of all their property to trustees for the payment of their debts. The statute declares that no such assignment shall be valid, until the person making it shall make oath that he has assigned all his property, &c. The oath was made by the agent who executed the assignment, that the company had assigned, &c., and this was held sufficient. Here the directors swear that the mortgage is made to secure the debt specified in the condition thereof, &c., that said bonds are issued to pay just debts of the company, &c.; the signatures to this oath did not purport to be on behalf of the corporation. The cases are entirely parallel. The case of *Flint* v. *Clinton Co.*, was cited and approved in *Tenney* v. *East Warren Lumber Co.*, 43 N. H. 343.

This supposed defect in the execution of the mortgage, so far as it affects personal property, seems sufficiently answered by the counsel for the trustees. Before the plaintiff's claim intervened, the road and all its property had been delivered to the trustees. This was done July 20, 1855. This suit was not commenced till June, 1859. The statute provision is, that "no such mortgage shall be valid against any person except the mortgagor, his executors and administrators, unless possession is delivered or the mortgage is sworn to and recorded in the manner before prescribed." Rev. Stat., ch. 32, sec. 7; Comp. Stat. 294.

The next objection is, that the present trustees were not duly elected, because they had not been previously holders of bonds of the road, but they had each purchased a bond for the purpose of qualifying themselves for the trust. It is not found by the case that any actual fraud was intended or effected, and we can presume none. In itself there can be no objection to a man's obtaining the necessary qualification to enable him to be a trustee or director, if no improper object or purpose is aimed at. We think, therefore, these gentlemen must be deemed legally competent to the trust, and their election valid.

It is then objected that the bonds held by these trustees were sold before the occurrences upon which the plaintiff rests his claim, and their offices were thenceforth vacant. If it were true that any officer or trustee, whose eligibility depends on his possessing a certain property qualification, ceases *de facto* to hold the office or trust, when he ceases to have the qualification, it would make no difference in this case. The party who holds in his hands trust property knowingly, even by wrong, will be held in equity to be charged with the due execution of the trust. The funds which he receives as trustee or under circumstances which make him chargeable as trustee, he is bound to account for to those who are equitably entitled to them under that trust. He can not consequently be charged in a trustee process to third persons who are creditors of persons supposed to have the legal interest, if the title of the trustee fails. *DeBarante* v. *Gott*, 6 Barb. 498; *Shepherd* v. *McEvers*, 4 Johns. Ch. 138; 4 Kent Com. 307; 2 Mad. Ch. Pr. 125; 1 Story Eq. 384; 2 Story Eq. 502, &c.; Willard Eq. 418; 1 Johns. Ch. 575; *Murray* v. *Ballou*.

It is a settled rule of law that a trustee, after he has accepted the office, can not discharge himself by a subsequent resignation merely, or by any act of his own. He must either be discharged from the trust by virtue of a special provision of the deed or will, which creates the trust, or by an order or decree of the Court of Chancery (or other court of competent jurisdiction), or with the general consent of all persons interested in the execution of the trust. *Cruger* v. *Halliday*, 11 Paige 319; *Shepherd* v. *McEvers*, 4 Johns. Ch. 138; *Matter of VanWick*, 1 Barb. Ch. 567; 1 Willard Eq. 470; Adams Eq. 38.

As a general rule a trustee can not be charged, unless at the time of the disclosure the principal defendant had a right of action against him for some indebtedness, or property in his possession, or unless the trustee had in his hands property belonging to the principal, which the latter had the legal right to take and carry away. *Greenleaf* v. *Perrin*, 8 N. H. 273; *Boardman* v. *Cushing*, 12 N. H. 112.

The trustee process can be maintained against an actual trustee, *bonâ fide* appointed by deed or will, only in a few cases. If the party attempted to be charged is a trustee for the benefit of the debtor, he may be charged for every thing in his hands for which he is at the time accountable to the debtor. But where the trust is created by a third person, and the trustee is vested with a discretion as to the time, amount or manner of the payments to be made to the debtor, he can not be charged as trustee. *Briggs* v. *Beach*, 18 Vt. 115; *Vincent* v. *Gorham*, 3 Met. 343; *White* v. *Jenkins*, 16 Mass. 62. If the trust is created by a stranger, though for the benefit of the debtor, the trustee can be charged only in conformity to the terms of the trust.

If the trust is created by the debtor, the trustee who has received the trust property may be charged, if the trust is fraudulent as to creditors, being for his own benefit; *Crane* v. *Stickles*, 15 Vt. 252; or if from any defect of the conveyance, the trust fails wholly never taking effect, though if the defect is such that equity would

decree the instrument to be reformed, in the absence of fraud, the trustee should not be charged.

If the trust, originally effective and operative, should, after a time, fail, because its objects become impracticable or have been fully accomplished, the trustee may be charged as trustee of the residue, for the debtor himself. But if the trustees fail, or if the property has got into wrong hands, equity never allows the trust to fail for want of a proper trustee, but will either compel a proper appointment or will itself appoint a trustee. Adams Eq. 174, note; *King* v. *Donelly*, 5 Paige 46; *DeBarante* v. *Gott*, 6 Barb. 498; *Carter* v. *Orphan, &c.,* 9 Cow. 437; Jer. Eq. 163; *Depeyster* v. *Clendenning,* 8 Paige 310.

These principles of course limit the grounds upon which actual trustees can be charged to the cases of failure of the trust. If the trust exists for the benefit of any other than the debtor, the trustees can not be charged, because the fund to be reached is in equity, that is, by the law of the land, the property of the beneficiary, and not of the debtor. *Mayhew* v. *Price,* 42 Me. 296; *Pickering* v. *Wendell,* 20 N. H. 222; *Hinckley* v. *Williams,* 1 Cush. 492; *Wright* v. *Bosworth,* 7 N. H. 593; *Dickenson* v. *Strong,* 4 Pick. 57; *Supton* v. *Cutter,* 8 Pick. 298.

If, then, the defendant trustees were ineligible, or have subsequently become incapable, or if they or others have even got possession of the property by wrong, they can not be charged as trustees of the debtor. It is therefore unnecessary to consider any questions relating to the election of the trustees, or the subsequent transactions in relation to the road or the funds arising from it. To whomsoever else the trustees may be accountable, they are not so to the debtor corporation in this case, nor to its creditors.